UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GENEVA LEMA, | CASE NO. 1:10-cv-01131-SMS |
|     Plaintiff, | |
|     v. | ORDER DENYING MOTION TO STRIKE |
| COURTYARD MARRIOTT MERCED, et al., | |
|     Defendants. | (Doc. 59) |

Defendants move to strike portions of Plaintiff's first amended complaint pursuant to F.R.Civ.P. 12(f). Defendants' failure to support their laundry list of materials to be stricken belies their true intent, which is to continue their strategy of delaying the resolution of this case. Finding no basis to strike any portion of the amended complaint, the Court denies the motion.

**I.**     **Materials That Defendants Move to Strike**

Defendants move this Court to strike the following portions of Plaintiff's complaint:

1.     The final three phrases of paragraph 6, in which Plaintiff sets forth her

standing to seek relief pursuant to the Americans with Disabilities Act:

> she has bothered to make herself aware of the hotel's construction and alteration history triggering the obligation to provide disabled access; she has invested substantial money and time to research and determine the hotel's obligations; and she promises to protect and fully enforce the Public Interest ahead of the personalized interests she has in this suit.

Doc 58 at 5.

1

2.     Footnote 1 of paragraph 14:

Information concerning Ms. Lema's church and ministry can be found at http://revnevalema.cityslide.com/n.html.  A video example of her speaking ministry is viewable at http://www.youtube.com/watch?v=Wf10613KMUE&feature=related.

3.     The phrase "now needs the use of a wheelchair over 50 percent of the time" in Paragraph 14.

4.     Paragraphs 16-20:

16. Lema estimates her ministry in Merced has reached 500-600 people in the Merced area not including those who have viewed her on television.  She estimates she has gotten to know personally, and on a name basis, approximately 100 people in the area.

17. Because of the advancement of her disabilities since 2005, requiring a significantly higher use of a wheelchair, and because of significant barriers at the neighboring Comfort Inn, Lema has been forced to start staying at the subject Courtyard and has now been doing so since that hotel first opened in approximately January of 2008.

18. **Inaccessible Conditions at the Neighboring Comfort Inn That Dictate Plaintiff's Choice to Stay at the Courtyard:** Formerly on the traveling ministry trips, Plaintiff stayed at the aforementioned Comfort Inn (formerly Holiday Inn Express), which neighbors the Courtyard, and had been doing so for approximately 10 years.  She switched to staying at the Courtyard shortly after it opened in 2008.  The reason for the switch was the more formidable architectural barrier conditions she encountered at the Comfort Inn, whose barriers were not manageable.  However, in most cases, especially when traveling with a team, Lema would prefer to stay at the Comfort Inn if made accessible.  Its rates are cheaper and afford her the ability to bring along and meet with her ministry team.  The team is usually 10 persons, which she has brought with her in the past, renting 3 rooms.  And the local churches that pay for her rooms cannot always afford that many rooms at a hotel as pricey as the Courtyard.  The same is true of Lema's ability to pay on those occasions where she had to pay for lodging out of her honorarium.  Because of these economics, Lema has not been able to afford to take her team with her, and has thus been deterred from staying at the Comfort Inn.

19. Lema had been embarrassed while staying at the Comfort Inn.  On one occasion in 2006 when she visited the area for a church's women's conference, she was unable to use the cramped bathroom in the designated accessible bathroom she took at the Comfort Inn.  As a consequence, she was forced to check out in the middle of the night to obtain a more accessible guestroom in Turlock.  On another occasion in 2007 when she rented the suite for purposes of meeting with her team, the inaccessible size of the bathroom would not allow her to enter and close the door.  She was thus forced to

disrobe and use the facilities with the door open, and with her team within earshot in the adjoining room. The architectural barriers at the Comfort Inn have caused Lema [to] "live a little bit different than everybody else," while staying at the Inn. These include the disabled parking, the absence of a ramp at the front entrance step, the registration lobby cramped by furniture and with a high check-in desk, the swimming pool, and the configuration of her hotel rooms.

20. **Barriers to Disabled Access Affecting Plaintiff's stays at the Courtyard.** Lema has been deposed in the instant case, and was able to describe in considerable detail the barriers to disabled access that she encountered at the Courtyard, from the parking with the unloading on the wrong side, the commissary in the non-compliant alcove, the heavy doors, the tables she could not fit under with her wheelchair at breakfast, in the public restroom the seatcover dispenser that is out of reach, etc. (See Lema Depo (LD) at pp. 14:5-7; 14:21-24; 15:12 thru 16:21; 17:6-22; and 18:2-4. Plaintiff also testified to her familiarity with her consultant's report for the two subject hotels, and stated that "if asked," she would be able to describe how each affected her disability (See LD at 73:9-15.) She also described how switches that are too high are difficult to use, and as to her weak hands, which affect her ability to perform actions that require gripping." (LD, pp. 76:24thru 77:15.) She testified how the barriers to disabled access at the Courtyard forces her to bring a female assistance, i.e., for tasks as simple as using the restroom. The barriers force her to rearrange how she conducts business on these trips. (LD, p. 22:8-14.) All of the foregoing testimony is hereby incorporated into the complaint word for word as if fully restated hereafter.

5. Paragraphs 32 to 37, except for the last sentence of paragraph 37 ("The acts and omissions of defendants set forth herein were in violation of plaintiff's rights under the ADA, Public Law 101-336, and the regulations promulgated thereunder, 28 CFR Part 36ff." Doc. 58 at 24.) These paragraphs quote sections of the Americans with Disabilities Act that Plaintiff alleges to be applicable to the case.

6. Paragraph 41, except for the last sentence ("On information and belief, the subject facility constitutes a 'commercial facility,' and defendants have, since the date of enactment of the ADA, performed alterations (including alterations to areas of primary function) to the subject building and its facilities, public accommodations, and commercial facilities, which fail to provide facilities and paths of travel to such areas that are readily accessible to and usable by individuals with disabilities, in violation of Section 303(a)(2), and the regulations

|   |   |   |
|---|---|---|
| | | promulgated thereunder, 28 CFR Part 36 ff." Doc 58 at 24-25.)  This paragraph sets forth the ADA's definition of discrimination. |
| | 7. | Paragraphs 48 to 52 quote portions of state statutes applicable to Plaintiff's claims. |

## II.     Standards Governing Rule 12(f) Motions

Rule 12(f) provides that the Court may strike from a pleading any redundant, immaterial, impertinent, or scandalous matter.  "The function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial . . . ."  *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010), *quoting Fantasy, Inc. v. Fogerty,* 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd on other grounds*, 510 U.S. 517 (1994).

Because of their frequent use as delaying tactics and because of judicial policy favoring resolution on the merits, motions to strike are disfavored. *Stanbury Law Firm, P.A. v. Internal Revenue Service*, 221 F.3d 1059, 1063 (8th Cir. 2000).  Striking a party's pleadings is an extreme measure that is infrequently granted.  *Id.* at 1063; *United States v. 729.773 Acres of Land*, 531 F.Supp. 967, 971 (D. Haw. 1982).  *See also RDF Media Ltd. v. Fox Broadcasting Co.*, 372 F.Supp.2d 556, 561 (C.D. Cal. 2005) ("Motions to strike are generally disfavored because of the limited importance of pleadings in federal practice and because it is usually used as a delaying tactic.")  Since the law's primary objective is to try each case on its own merits, "a case should be tried on the proofs rather than the pleadings." *Rennie & Laughlin, Inc. v. Chrysler Corp.*, 242 F.2d 208, 213 (9th Cir. 1957).

Before a court grants a motion to strike, it must be certain that there are no factual issues, that any legal questions are clear and undisputed, and that the claim or defense could not succeed under any possible circumstances. *RDF Media*, 372 F.Supp.2d at 561.  "[T]he court must view the pleading in the light most favorable to the pleader."  *Id.*  "[I]f the court is in doubt as to whether the challenged matter may raise an issue of fact or law, the motion to strike should be denied and the sufficiency of the allegations left for adjudication on the merits."  *Sagan v. Apple Computer, Inc.*, 874 F.Supp. 1072, 1079 (C.D. Cal. 1994).

To analyze a motion to strike, a court must first determine whether the challenged claim was (1) an insufficient defense; (2) redundant; (3) immaterial; (4) impertinent; or (5) scandalous. *Whittlestone*, 618 F.3d at 973-74.  Defendants contend that the portions of the complaint they have cited are immaterial, impertinent, prejudicial, and superfluous.

## II.     **Immaterial Pleadings**

Defendants' principal argument is that the materials they seek to strike are immaterial and will serve only to "complicate the trial, lengthen it, and confuse the issues." Doc. 59-1 at 2. "Immaterial matter is that which has no essential or important relationship to the claim for relief or the defenses being plead." *Fantasy*, 984 F.2d at 1527, *quoting* 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1382 at 706-07 (1990).  Defendants specifically argue that the phrase "now needs the use of a wheelchair in paragraph 14 is immaterial since Plaintiff's current condition is irrelevant at the time that she filed the action and the two years preceding it.

"Motions to strike are generally not granted unless it is clear that matter to be stricken could have no possible bearing on the subject matter of the litigation." *Lazar v. Trans Union LLC*, 195 F.R.D. 665, 669 (C.D. Cal. 2000) (*internal quotation marks and citations omitted*). Plaintiff replies that including the current extent of her disability finalizes allegations illustrating the progressive nature of her disability.

"Superfluous historical allegations are a proper subject of a motion to strike. *Fantasy*, 984 F.2d at 1527.  Thus, resolving this dispute requires the Court to determine whether Plaintiff's allegations concerning the nature of her disability, including its progression in recent years, are superfluous.  In its order granting Defendants' motion to dismiss Plaintiff's original complaint, the Court conducted a lengthy analysis of Plaintiff's standing to bring her ADA claims, including the necessity of tying Plaintiff's disability to her claims of discrimination.  The Court will not repeat that analysis here.  Plaintiff's allegations regarding her disability are unquestionably material to this action, *as Defendants argued in their previous motion to dismiss the complaint*.

///

Allegations regarding Plaintiff's disability and its progress also provide background necessary to intelligent analysis of her claims. For example, in *Stanbury*, the plaintiff brought suit to force the IRS to release tax records containing the names of contributors to a charitable foundation of which a justice of the Minnesota Supreme Court served as president. 221 F.3d at 1059. The District Court struck the entire complaint pursuant to R. 12(f), reasoning that the complaint included information that was not relevant to the FOIA suit and served only to impugn the integrity of the justice. *Id.* at 1063. The Eighth Circuit concluded that the district court abused its discretion, reasoning that although the complaint detailed the justice's relationship with the foundation and potentially could create conflict of interest issues for him, the allegations provided "important context and background" to the plaintiff's suit. *Id.*

### III. Impertinent Pleadings

Defendants' memorandum of points and authorities does not discuss their contention that the materials that they seek to strike are impertinent. "Impertinent matter consists of statements that do not pertain, and are not necessary, to the issues in questions." *Fantasy*, 984 F.2d at 1527, *quoting* 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1382 at 706-07 (1990). When confronted with a motion to strike material as impertinent and immaterial, a court must deny the motion "unless it can be shown that no evidence in support of the allegation would be admissible." *Barcher v. New York Univ. School of Law*, 993 F.Supp. 177, 181 (S.D. N.Y. 1998), *aff'd*, 172 F.3d 37 (2d Cir. 1999), *quoting Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 893 (2d Cir. 1976). Defendants having failed to articulate a basis for this contention, the Court will not speculate on which of the cited portions of the complaint they contend are impertinent.

### IV. Redundant Pleadings

Defendants' memorandum of points and authorities does not discuss their contention that the materials that they seek to strike are redundant. Matter is not redundant if it merely duplicates allegations set forth in other paragraphs of the complaint. *Sagan*, 874 F.Supp. at 1080. If there is doubt whether the material is truly redundant and if a party may be prejudiced by striking it, a court should not strike the challenged matter as redundant. *Id.* For example, when a cause of

6

action included allegations arguable redundant with allegations supporting a prior, but different, cause of action, and the redundancy did not prejudice the defendant challenging the redundancy in any way, the court denied the motion to strike redundant allegations. *Id.* Defendants having failed to articulate a basis for this contention, the Court will not speculate on which of the portions of the complaint they contend are redundant.

## V. **Scandalous Pleadings**

Defendants' memorandum of points and authorities does not discuss their contention that the materials that they seek to strike are prejudicial. Since "prejudicial" is not among the categories generally contemplated in courts' analysis of motions to strike, the Court construes Defendants' contention as asserting that the cited materials are scandalous.

Inflammatory language includes language that is inflammatory and highly prejudicial. *Bureerong v. Uvawas*, 922 F.Supp. 1450, 1479 (C.D. Cal. 1996). For example, even when certain defendants had recently pled guilty to slavery charges, the court found the term "slave sweatshops" to be "immaterial, scandalous, and highly prejudicial" since referring to the defendants' subjecting workers to involuntary servitude could have been alleged using a less inflammatory term. *Id.* But in *Barcher*, a sexual harassment suit, the court denied the defendants' motion to strike their individual names from the caption and allegation of scandalous allegations against them, finding that the plaintiff's testimony alone constituted sufficient evidence to retain the allegations. 993 F.Supp. at 181.

Defendants having failed to articulate a basis for this contention, the Court will not speculate on what portions of the complaint they contend are prejudicial or scandalous. Nonetheless, the Court notes that nothing in the materials identified by Defendants appears prejudicial or scandalous on its face.

## VI. **Frivolous and Malicious Motions**

This Court has repeatedly warned Defendants and their current counsel regarding motions and other litigation tactics apparently presented solely for improper purposes including harassment, delay, and inflation of litigation costs. Further frivolous or malicious tactics will subject Defendants and their attorney to sanctions pursuant to F.R. Civ. P. 11.

**VII.   Conclusion and Order**

    Defendant's Motion to Strike is hereby DENIED.

IT IS SO ORDERED.

Dated:   June 13, 2012                     /s/ Sandra M. Snyder
                                                       UNITED STATES MAGISTRATE JUDGE