1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

9  GENEVA LEMA,                          CASE NO. 1:10-cv-01131-SMS

10                    Plaintiff,
                                         ORDER GRANTING PLAINTIFF'S
11       v.                              MOTION FOR SUMMARY JUDGMENT

12  COURTYARD MARRIOTT MERCED, et al.,

13                                       (Docs. 73, 75, and 76)
                      Defendants.
14  _____

15
16          Both parties have moved for summary judgment in this case and its companion case,

17  *Lema v. Comfort Inn, Merced* (1:10cv-00362-SMS).  The Court having previously ordered the

18  measurements determined by Plaintiff's expert to be established and accurate, Defendants do not

19  challenge the existence of the barriers that Plaintiff has alleged and do not contend that any

20  proposed remediation is not readily achievable.  They oppose summary judgment solely on the

21  basis that Plaintiff lacks standing, supporting their contentions with a misinterpretation of

22  Plaintiff's deposition.  As a result, the Court finds no material factual dispute exists and that

23  Plaintiff is entitled to summary judgment, an injunction requiring correction of inaccessible

24  conditions at the Courtyard Marriott Merced, statutory damages, and attorney's fees and costs.

## I.   Procedural History

25
26          On June 22, 2010, Plaintiff filed a complaint against Defendants seeking injunctive relief

27  and damages for violations of the Americans With Disabilities Act of 1990 (42 U.S.C. § 12101 *et*

28  *seq*.); California state disabilities rights laws (California Civil Code §§ 54, 54.1, and 55); and the

1    Unruh Civil Rights Act.  Plaintiff sought injunctive and declaratory relief, and treble damages.

2    Defendants answered on July 29, 2010.

3         Earlier, on February 27, 2010, Plaintiff had filed a complaint in a companion case: *Lema*

4    *v. Comfort Inn, Merced*, 1:10cv-00362-SMS.  Because the defendants in the two cases are

5    substantially the same persons and entities, discovery and most other proceedings were

6    consolidated to promote economy.

7         Following multiple substitutions of counsel in the spring and summer of 2011,

8    Defendants failed to provide timely expert discovery, resulting in the Court's striking

9    Defendants' designation of its expert witness on January 19, 2012.  The Court declared the hotel

10   measurements, as determined by Plaintiff's expert Karl Danz, established and accurate for

11   purposes of the continuing litigation.

12        On February 3, 2012, Defendants moved to dismiss the case for lack of jurisdiction,

13   arguing that Plaintiff failed to allege that she had visited the Courtyard and encountered at least

14   one architectural feature that denied her full and equal access to the facilities because of her

15   particular disability.  On March 27, 2012, the Court dismissed the complaint with leave to

16   amend, observing that although Plaintiff had testified to the disputed matter in her deposition, the

17   complaint did not allege facts that she had visited the Courtyard and encountered barriers

18   resulting from her particular disability .

19        After Plaintiff filed her first amended complaint on April 25, 2012, Defendants moved to

20   strike portions of it.  The Court denied the motion, noting that Defendants' failure to support

21   their motion revealed their continuing strategy of delay.  The Court warned Defendants that

22   additional motions presented for improper purposes, such as harassment, delay, and inflation of

23   litigation costs, would subject them sanctions under F.R.Civ.P. 11.

24        On the same day, Defendants also moved for a more definite statement, contending that

25   they were unable to connect Plaintiff's alleged disability to the barriers that she alleged that she

26   encountered at the Comfort Inn.  The Court denied Defendant's motion, noting that first amended

27   complaint was sufficient to apprise Defendants of the claims against them and that the type of

28   ///

1  detailed information Defendants sought was more appropriately secured in the course of

2  discovery.

3      On July 2, 2012, Defendants moved to dismiss the complaint for lack of jurisdiction.  The

4  Court struck the motion and directed Defendants to answer the complaint within ten days.

5  Defendants answered on July 13, 2012.

6      On August 2, 2012, Defendants filed another motion to dismiss for lack of jurisdiction.

7  Because Defendants filed this motion to dismiss after filing their answer, the Court ordered that

8  the motion would be deemed a summary judgment motion to be adjudicated according to

9  procedures applicable to motions brought under Rule 56.  Plaintiff filed a consolidated motion

10 for summary judgment on August 3, 2012.  To promote clarity of understanding and ease of

11 execution, the Court will issue a separate order for each case.

12 **II.    Applicable Facts**

13      Plaintiff, Reverend Geneva Lema, who is 74 years old, is the founder and pastor of City

14 Restoration Church in Fairfield, California.  For over thirty years, she has also maintained a

15 traveling ministry, speaking throughout California and the United States.  Her speaking

16 engagements typically include ten to twelve churches in the greater Merced area, including two

17 annual appearances at Liberty Church in Atwater.  Plaintiff documented her stays at the

18 Courtyard in 2008 and 2009 with copies of invoices and receipts.  When Plaintiff prepared her

19 declaration in August 2012, she anticipated staying at the Courtyard in October 2012, when she

20 would again be speaking at Liberty Church.

21      Plaintiff has a condition called *osteogenesis imperfecta*.[1]  She is four feet tall when

22 standing and 39 inches tall when seated in her wheelchair, limiting the height to which she can

23 reach.

24      Until 2006, Plaintiff was relatively mobile on crutches.  Triple spiral fractures in both

25 legs in 2006 and subsequent injuries increased her pain, introduced a need for prescription pain

26

27      [1] *Osteogenesis imperfecta* (OI) is a congenital condition frequently caused by a genetic defect that impairs the body's production of type 1 collagen, a necessary component of bone.

28 www.ncbi.nlm.nih.gov/pubmedhealth/PMH0002540 (March 27, 2013).  Persons with OI have extremely fragile bones and typically do not grow to average height. *Id.*  Classic symptoms include multiple bone fractures. *Id.*

3

1   killers, diminished her endurance, and increased her instability.  Since 2006, Plaintiff limits her

2   use of crutches to walking around in her own home and preaching.  In her declaration (Doc. 78-3)

3   and deposition, Plaintiff explained that because of her familiarity with her home, including

4   furniture placement and available handholds, using crutches there was convenient and safe.  She

5   opined that standing during her presentations was necessary to project "a pastoral message of

6   strength."  Otherwise, due to her fragility and instability, she always uses her motorized

7   wheelchair when she is inside an unfamiliar building or outside.   The physical stress of

8   traveling, especially extended auto travel, causes debilitating physical stress that quickly exhausts

9   her.

10       When Plaintiff travels to Merced for a speaking engagement, she would prefer to stay at a

11  lower priced hotel, such as the Comfort Inn, since the cost of lodging Plaintiff and her ministry

12  team is either paid from Plaintiff's honorarium or by the sponsoring church, which often cannot

13  afford expensive lodging. Plaintiff had stayed at the Comfort Inn for many years, dating back to

14  its tenure as a Holiday Inn.  In her deposition, she recounted the embarrassment she experienced

15  in 2006 when she was unable to enter the restroom in her "accessible" room at the Comfort Inn

16  and had to check out in the middle of the night and move to a more accessible room in Turlock.

17  When Plaintiff rented a suite at the Comfort Inn in 2007, using the inaccessible bathroom

18  required her to disrobe outside the room and use the toilet without closing the door, within

19  hearing of those with whom she was meeting in the adjacent room.  When the Courtyard opened

20  in 2008, Plaintiff elected to stay there since its barriers are more manageable than those she

21  encountered at the Comfort Inn.

22       Nonetheless, the Courtyard presents multiple barriers to accessibility.  On her first visit to

23  the Courtyard, Plaintiff was unable to use the only available disabled parking space because it

24  lacked sufficient room to extend the ramp from her van.  The lobby counter was too tall for

25  Plaintiff and the hotel clerks to see each other.  She could not reach the desk top to sign

26  registration materials.  The door to Plaintiff's guestroom was too heavy for her to push open and,

27  once opened, swung back and locked too quickly.  The tables in the lobby were too low to

28  accommodate Plaintiff when she was seated in her wheelchair.  When she used the public

1   bathroom near the lobby, she was unable to reach the toilet seat cover dispenser, which was

2   located above the back of the toilet.

3          Defendants are the individuals and entities that own the hotel.   In his October 10, 2012

4   declaration, Defendant Edwin Anthony stated, "All of the ADA barriers alleged in Plaintiff's

5   complaints in both these cases have been removed."  Doc. 80-1 at 1.

6          In his expert report, Plaintiff's accessibility consultant Karl Danz set forth measurements

7   and observations of those aspects of the facilities that were not accessible to Plaintiff, and opined

8   that neither hotel complied with the ADA or Title 24 code requirements that were in effect on

9   their respective construction dates.  As previously noted, the Court has already deemed Danz's

10  measurements and observations established and accurate.  Defendants do not contend that

11  removing the barriers identified by Plaintiff and Danz is not readily achievable.

12         On July 31, 2012, Plaintiff's accessibility expert Barry Atwood reinspected the

13  Courtyard[2] and observed that the conditions that Danz identified were still present except for

14  correction of the security latch on the door and insulation of the drain pipe under the sink in room

15  104; resolution of the three parking issues; correction of the height and clear space required for

16  the poolside emergency telephone; lowering the controls for the spa; correcting the secondary

17  pool exit door to open to 90 degrees; and lowering of the emergency telephone in the exercise

18  room, although it still remained obscured by equipment.  The landing for the laundry room

19  entrance door was obstructed by a laundry basket.  Atwood also inspected the hotel on September

20  30, 2012.  Although he had attempted to reserve an accessible guestroom for that visit, he was

21  advised that all accessible rooms were booked or unavailable.  His inspection revealed that six

22  guestrooms, including the five accessible rooms, were being demolished.  Atwood annotated the

23  Danz report to reflect conditions observed on September 30, 2012.

24  **III.   Summary Judgment**

25         Summary judgment should be granted "if the pleadings, the discovery and disclosure

26  materials on file, and any affidavits show that there is no genuine issue as to any material fact and

27  that the movant is entitled to judgment as a matter of law."  F.R.Civ.P. 56(c)(2); *Adickes v. S.H.*

28

          [2]  For reasons not disclosed by Plaintiff, Danz was unavailable to perform the reinspection.

*Kress & Co.*, 398 U.S. 144, 157 (1970); *Fortyune v. American Multi-Cinema, Inc.*, 364 F.3d 1075, 1080 (9th Cir. 2004).  The party seeking summary judgment bears the initial burden of establishing the basis of its motion and of identifying the portions of the declarations, pleadings, and discovery that demonstrate absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007).  A fact is material if it could affect the outcome of the suit under applicable law.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986); *Thrifty Oil Co. v. Bank of America Nat'l Trust & Savings Ass'n*, 322 F.3d 1039, 1046 (9th Cir. 2003).  A dispute about a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party.  *Anderson*, 477 U.S. at 248; *Long v. County of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006).

When the moving party will have the burden of proof on an issue at trial, it must demonstrate that no reasonable trier of fact could find other than for the moving party. *Soremekun*, 509 F.3d at 984.  When the non-moving party will have the burden of proof on an issue at trial, the movant may prevail by presenting evidence that negates an essential element of the non-moving party's claim or merely by pointing out that no evidence supports an essential element of the non-moving party's claim.  *See Soremekun*, 509 F.3d at 984; *Nissan Fire and Marine Ins. Co. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1105-06 (9th Cir. 2000).  If a moving party fails to carry its burden of production, then "the non-moving party has no obligation to produce anything, even if the non-moving party would have the ultimate burden of persuasion." *Id.* at 1102-03.  If the moving party meets its initial burden, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually exists.  *Id.* at 1103.  The opposing party cannot "'rest upon the mere allegations or denials of [its] pleading' but must instead produce evidence that 'sets forth specific facts showing that there is a genuine issue for trial.'"  *Estate of Tucker v. Interscope Records*, 515 F.3d 1019, 1030 (9th Cir.) *(quoting* F.R.Civ.P. 56(e))*, cert. denied*, 555 U.S. 827 (2008).

The evidence of the opposing party is to be believed, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing

party.  *See Anderson*, 477 U.S. at 255; *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Stegall v. Citadel Broadcasting Co.*, 350 F.3d 1061, 1065 (9th Cir. 2003).  Nonetheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn.  *See Sanders v. City of Fresno*, 551 F.Supp.2d 1149, 1163 (E.D.Cal. 2008), *affirmed*, 340 Fed.Appx. 377 (9th Cir. 2009); *UMG Recordings, Inc. v. Sinnott*, 300 F.Supp.2d 993, 997 (E.D.Cal. 2004).  "A genuine issue of material fact does not spring into being simply because a litigant claims that one exists or promises to produce admissible evidence at trial." *del Carmen Guadelupe v. Negron Agosto*, 299 F.3d 15, 23 (1st Cir. 2002).  A court has the discretion in appropriate circumstances to consider materials that are not properly brought to its attention, even though a court is not required to examine the entire file for evidence establishing a genuine issue of material fact when the opposing party has not set forth the evidence with adequate references. *See Southern California Gas Co. v. City of Santa Ana*, 336 F.3d 885, 889 (9th Cir. 2003); *Carmen v. San Francisco Unified School District*, 237 F.3d 1026, 1031 (9th Cir. 2001).  If the nonmoving party fails to produce evidence sufficient to create a genuine issue of material fact, the moving party is entitled to summary judgment. *See Nissan Fire & Marine*, 210 F.3d at 1103.

**IV.  Americans With Disabilities Act (ADA)**

In enacting the ADA, Congress found that discrimination against the disabled is "most often the product, not of invidious animus, but rather of thoughtlessness and indifference." *Alexander v. Choate*, 469 U.S. 287, 295-96 (1985).  Concluding that "we can no longer tolerate the invisibility of the handicapped in America" (118 Cong. Rec. 525-26 (1972)), it enacted the ADA "to provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(2).  To prevail on a discrimination claim under Title III of the ADA, a plaintiff must prove that (1) she is disabled within the meaning of the ADA; (2) the defendant is a private entity that owns, leases, or operates a place of public accommodation; and (3) the plaintiff was denied full and equal treatment by defendant because of her disability.  *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 730 (9th Cir. 2007).

///

1      Unlawful discrimination occurs when features of an accommodation "subject an

2  individual . . . on the basis of disability or disabilities . . . , directly, or through contractual,

3  licensing, or other arrangements, to a denial of the opportunity of the individual . . . to participate

4  in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of an

5  entity." 42 U.S.C. § 12182(b)(1)(A)(iv). When a building is already constructed, discrimination

6  includes the failure to remove architecture barriers when such removal is readily achievable. 42

7  U.S.C. § 12182(b)(2)(A)(iv). In this case, Defendants do not contend that removing the

8  architectural barriers at the Courtyard is not readily achievable.

9      Nor do Defendants contest the existence of the barriers that Danz identified. Indeed, after

10  their failure to retain and identify an expert witness, the Court ordered that the hotel

11  measurements set forth in Danz's expert report were deemed established and accurate.

12  The ADA Accessibility Guidelines (ADAAG) define whether a facility is "readily accessible" by

13  establishing technical structural requirements for places of public accommodation. *Chapman v.*

14  *Pier I Imports (U.S.) Inc.*, 631 F.3d 939, 945 (9th Cir. 2011). Any element of a facility that does

15  not meet or exceed the ADAAG requirements is a barrier to access. *Id.* The Court's adoption of

16  the measurements, and hence the barriers, identified in Danz's report forecloses any attempt by

17  Defendants to dispute the existence of architectural barriers to accessibility at the Comfort Inn.

18  As a result, Defendants' sole objection to Plaintiff's ADA claims is that she lacks standing to

19  prosecute her claims.

20      **A.    Standing, in General**

21      "In essence the question of standing is whether the litigant is entitled to have the court

22  decide the merits of the dispute or of particular issues." *Warth v. Seldin*, 422 U.S. 490, 498

23  (1975). From a constitutional standpoint, standing addresses the question of whether the plaintiff

24  has made out a case or controversy between himself and the defendant. *Id.* A federal court has

25  jurisdiction only when the plaintiff himself has experienced a threatened or actual injury from the

26  defendant's alleged illegal action. *Id.* at 499.

27      "An ADA plaintiff suffers a legally cognizable injury under the ADA if he is

28  'discriminated against on the basis of disability in the full and equal enjoyment of the goods,

services, [or] facilities of any place of public accommodation.'" *Chapman*, 631 F.3d at 944, 952,

*quoting* 42 U.S.C. § 12182(a).  The ADA proscribes not only obviously exclusionary conduct,

such as a sign stating that disabled patrons are unwelcome, but also the "more subtle forms of

discrimination–such as difficult-to-navigate restrooms and hard-to-open doors–that interfere with

disabled individuals' full and equal enjoyment of places of public accommodation." *Chapman*,

631 F.3d at 945 (*internal quotations omitted*).  When a disabled individual encounters or

becomes aware of alleged ADA violations that deter her patronage of or otherwise interfere with

her access to a place of public accommodation, she has suffered an injury in fact traceable to the

defendant's conduct and capable of Court redress, granting her Article III standing.  *Doran v. 7-

Eleven, Inc.*, 524 F.3d 1034, 1042 n. 5 (9th Cir. 2008).  *See also Chapman*, 631 F.3d at 946.

Courts must take a "broad view" of constitutional standing in ADA cases since private

enforcement suits are the primary method of enforcing compliance.  *Doran*, 524 F.3d at 1039.

"[S]tanding is an essential and unchanging part of the case-or-controversy requirement of

Article III."  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).  "[A]n ADA plaintiff can

establish standing to sue for injunctive relief either by demonstrating deterrence, or by

demonstrating injury-in-fact coupled with an intent to return to a noncompliant facility."

*Chapman*, 631 F.3d at 944.   When an ADA plaintiff has suffered an injury-in-fact by

encountering a barrier that deprives him of full and equal enjoyment of the facility due to his

particular disability, he has standing to sue for injunctive relief as to that barrier and all other

barriers relating to his disability even if he not personally encountered every such barrier.  *Id.*

That the disabled person is not deterred from returning to the public accommodation at issue is

immaterial.  *Id.* The statutory focus is the disabled person's right to "full and equal enjoyment of

the goods, services, [or] facilities."  *See* 42 U.S.C. § 12182(a).

To establish standing, a plaintiff must first allege that she has suffered an actual injury

attributable to Defendant's actions.  *Fortyune*, 364 F.3d at 1081.

**B.**     **Standing: Plaintiff's Use of Wheelchair and Crutches**

Defendants' first contention is that because Plaintiff does not use a wheelchair inside, she

cannot challenge the indoor barriers to a wheelchair user.  A plaintiff has sufficient personal

stake in the outcome of an ADA claim only to the extent that the alleged barrier relates to her

personal disability.  *Chapman*, 631 F.3d at 944, 947.  *See also Doran*, 524 F.3d at 1044 n. 7

(holding that a wheelchair-dependent plaintiff may challenge only those barriers relating to

mobility); *Steger v. Franco, Inc.*, 228 F.3d 889, 893 (8th Cir. 2000) (holding that a plaintiff who

is not blind lacks standing to sue for ADA violations that only affect the blind).  Thus, if Plaintiff

does not use a wheelchair inside structures such as the Courtyard, she would lack standing to

challenge the interior barriers to wheelchair use there.  Defendants' argument is based on a

misinterpretation of Plaintiff's deposition testimony.

In the course of the deposition, Plaintiff testified to the barriers she encountered at the

Courtyard.   Later in the deposition, Plaintiff's attorney, Mr. Thimesch, questioned Plaintiff as

follows:

> Q.     So you use–can you tell us how often you use a wheelchair for mobility and why?
>
> A.     Well, I need to give you a little background.  I was born with a very rare bone disease called osteogenesis imperfecta.  And my legs have been broken numerous times.  And I was quite mobile on crutches, the underarm crutches until 2006.  I got injured badly.  And now the wheelchair is over 50 percent and sometimes more.  ***I don't go into buildings on crutches.***  I enter– we just now went out to the bathroom.  And I had to jump over a threshold that lifted my wheelchair up and snapped me back down.  I can't be doing that on crutches after having the injury I had.  That changed everything.
>
> So I believe your question was how much do I use a wheelchair?
>
> Q.     Yes.
>
> A.     ***Okay.  All the time when it comes to outside.  I never walk outside.  Not now.  I no longer walk outside.***
>
> Q.     Now you said that you use a wheelchair a certain percentage of the time.  What do you use when you're not using a wheelchair?
>
> A.     ***If I'm home I walk on my crutches.  And when I'm preaching I walk on my crutches.***  So its hard to say.  I'm quite active, but I have to be in an area at home where I know the perimeters and I know–I'm familiar with everything so there's not uneven areas.  I have ramps in my house.

Lema Dep. at 75-76 (*emphasis added*).

Because Plaintiff's deposition testimony clearly indicated that she used a wheelchair at all

times except when she was within her own home or preaching, Defendants' first contention must

fail.  Plaintiff has standing to challenge those barriers within the Comfort Inn that affect an

individual using a wheelchair.

1      **C.    Failure to Allege Disability**

2          Defendants further contend that Plaintiff cannot prevail on an ADA claim because she

3  failed to allege any of the elements necessary to qualify as disabled.  Their contention is factually

4  incorrect since the First Amended Complaint alleged that as a result of *osteogenesis imperfecta* ,

5  which caused her leg bones to break easily, Plaintiff used a wheelchair for mobility and had

6  difficulty reaching due to her short stature, which was aggravated when she was seated in her

7  wheelchair.  It further alleged that Plaintiff has difficulty performing actions that require

8  "grasping, pinching, or twisting of the wrist."  Doc. 60 at 2.  And it provided an exhaustive list of

9  the barriers Plaintiff encountered when she stayed at the Courtyard as a result of her disabling

10  conditions.

11          Under the ADA, an individual has a disability if she has (1) a physical or mental

12  impairment substantially limits one or more of her major life activities, (2) a record of such an

13  impairment, or (3) been regarded as having such an impairment.  42 U.S.C. § 12102(1).  "Major

14  life activities . . . include, but are not limited to, caring for oneself, performing manual tasks,

15  seeing, hearing, eating, sleeping, walking, standing, lifting, bending, learning, reading,

16  concentrating, thinking, communicating, and working."  42 U.S.C. § 12102(2)(A).  "[A] major

17  life activity also includes the operation of a major bodily function, including but not limited to,

18  functions of the immune system, normal cell growth, digestive, bowel, bladder, neurological,

19  brain, respiratory, circulatory, endocrine, and reproductive functions."  42 U.S.C. § 12102(2)(B).

20  Determining whether an impairment substantially limits a life activity must be made without

21  regard to the ameliorative effects of mitigating measures such as mobility devices.  42 U.S.C. §

22  12102(4)(E).[3]  "The definition of disability in this chapter shall be construed in favor of broad

23  coverage of individuals under this chapter, to the maximum extent permitted by the terms of this

24  chapter."  42 U.S.C. § 12102(4)(A).

25          In evaluating a motion for summary judgment in a disability case, comparative or medical

26  evidence is not required.  *Rohr v. Salt River Project Agricultural Improvement and Power*

27  ─────────────────

28      [3]  This statutory provision, enacted as part of the ADA Amendments Act of 2008 (ADAAA), took effect
January 1, 2009.  The amended provision overruled *Sutton v. United Air Lines, Inc.*, 527 U.S. 471 (1999), on which
Defendants' argument relied in part.

*District*, 555 F.3d 850, 858-59 (9th Cir. 2008).  "However, '[t]o survive summary judgment an affidavit supporting the existence of a disability must not be merely self-serving and must convey sufficient detail to convey the existence of an impairment.'"  *Id.* at 859, *quoting Head v. Glacier Northwest Inc.*, 413 F.3d 1053, 1058 ( 9th Cir. 2005).

In her declaration and testimony, Plaintiff testified that she has a condition called *osteogenesis imperfecta*, which has resulted in her being much shorter than average and having frequently broken bones.  Defendants' motion concedes her illness.   Plaintiff testified and set forth in her declaration that after a 2006 accident severely fractured both of her legs, she became almost entirely wheelchair dependent as a result of increased pain, fatigue, and instability, as well as the increased danger of another accident.  Uncontroverted evidence supports a finding that Plaintiff has limitations of major life activities, including walking, standing, and manipulating objects that require twisting or turning, as well as an impairment of the major bodily function of cell growth.  In short, Plaintiff is unquestionably disabled for purposes of the ADA.

### D.   Standing: Lack of Intent to Return

Defendants argue that since Plaintiff has testified to her preference to return to the Comfort Inn, which is less expensive, she cannot show intent to return to the Courtyard, since staying at two Merced hotels would be impossible.

To establish standing to pursue injunctive relief, the sole remedy available to a private plaintiff under the ADA, she must allege a "real and immediate threat of repeated injury." *Fortyune*, 364 F.3d at 1081.  A plaintiff may satisfy this prong of the standing requirements by demonstrating her intent to return to a noncompliant accommodation or by establishing that she would be like to return but could not do so as long as the barriers remain.  *Chapman*, 631 F.3d at 944, 950.  Put another way, Plaintiff can demonstrate an ongoing actual injury either by demonstrating that the discriminatory barriers interfere with his continuing patronage of the facility or that the discriminatory barriers prevent his return or otherwise interfere with his access to the facility.  *Id.*  An ADA plaintiff "lacks standing if he is indifferent to returning to the store or if his alleged intent to return is not genuine, or if the barriers he seeks to enjoin do not pose a real and immediate threat to him due to his particular disability." *Id.*

12

"In determining whether the plaintiff's likelihood of return is sufficient to confer standing, courts have closely examined factors such as: (1) the proximity of defendant's business to plaintiff's residence, (2) the plaintiff's past patronage of defendant's business, (3) the definitiveness of plaintiff's plans to return, and (4) the plaintiff's frequency of travel near defendant." *Harris v. Del Taco, Inc.*, 396 F.Supp.2d 1107, 1113 (C.D. Cal. 2005) (*internal quotation omitted*). "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects." *Id.* at 1112 (*internal quotation omitted*). In *D'Lil v. Stardust Vacation Club*, 2001 WL 1825832 at *3 (E.D. Cal. December 21, 2001) (No. CIV-S-00-1496-DFL-PAN), the court concluded that the plaintiff had standing based on her stated intent to return, her history of travel to Lake Tahoe, and her particular reasons for patronizing the defendant's time-share hotel. *See also Parr v. L & L Drive-Inn Restaurant*, 96 F.Supp.2d 1065, 1079 (D. Hi. 2000) (finding standing where the plaintiff had one previous visit to the restaurant, which was located far from plaintiff's home, where plaintiff had a history of patronizing the restaurant chain, and where the court found the plaintiff's claimed intent to return to be sincere); *Delil v. El Torito Restaurants, Inc.*, 1997 WL 714866 (N.D.Cal. June 24, 1997) (No. C 94-3900-CAL) (finding no standing where the plaintiff had only one visit to a restaurant located over one hundred miles from her home and did not allege any intent to return).

Although the Courtyard is not located near Plaintiff's residence, that element deserves little weight when evaluating the accessibility of a hotel, which necessarily serves patrons who do not live nearby. The more important factors in this case are Plaintiff's long career as a traveling minister with regular speaking engagements at nearby churches, including two annual appearances at Liberty Church. When employed near Merced, Plaintiff stayed repeatedly at the Courtyard, at least twice within the applicable statutory limitations period and at least once before it. When this motion was taken under submission in September 2012, Plaintiff planned to again stay at the Courtyard in October 2012, when she was scheduled to speak at Liberty Church.

Defendants provide no authority supporting their contention that the Courtyard need not comply with applicable ADA regulations if the Comfort Inn, for which Plaintiff has stated a

preference, is to be made accessible.  The Court has been unable to identify any such authority.

Since Plaintiff otherwise satisfies the standing requirements for injunctive relief, letting Courtyard

off the hook for ADA compliance would be contrary to Congress's expressed policy of providing

"clear, strong, consistent, enforceable standards addressing discrimination against individuals with

disabilities."  42 U.S.C. § 12101(b)(2).  Applying the *Doran* prescription that courts interpret the

ADA  liberally to further its objective of promoting accessibility through citizen enforcement, the

Court holds that Plaintiff has standing to pursue injunctive relief against the Courtyard.

### E.      Summary of ADA Claim

Plaintiff has presented overwhelming evidence of barriers present at the Courtyard that

limit access and equal enjoyment of the facilities to individuals who, like Plaintiff, require use of a

wheelchair to ambulate.  Having presented no evidence whatsoever and having multiple legal

objections to Plaintiff's standing that are not supported by the facts of this case, Defendants fail to

present any genuine issue of material fact.  Plaintiff is entitled to judgment as a matter of law.

Accordingly, the Court will grant Plaintiff's request for injunctive relief regarding the barriers that

rendered the Courtyard inaccessible to her.

## V.    California Disabled Rights Acts

[C]laims under the Disabled Persons Act and the Unruh Civil Rights Act are established if

a violation of the ADA is established.  California Civil Code §§ 51(f); 54(c).  *See Chapman v.*

*Pier 1 Imports (U.S.) Inc.*, 870 F.Supp.2d 995, 1014 (E.D.Cal. 2012).  As a result, summary

judgment for Plaintiff on her ADA claim requires that this Court also grant her summary

judgment on her California state claims under the Disabled Persons Act and the Unruh Civil

Rights Act.  *Id.*

Plaintiff requests statutory damages of $4000 for each of the two instances in which she

stayed at the Courtyard during the statutory limitations period multiplied by the four barriers she

encountered on each visit.  A person who violates the Disabled Persons Act is liable for "actual

damages and any amount as may be determined by a jury, or the court sitting without a jury, up to

a maximum of three times the amount of actual damages but in no case less than one thousand

dollars" for each separate offense.  California Civil Code § 54.3(a).  A person who violates the

Unruh Civil Rights Act is liable for "the actual damages, and any amount as may be determined by a jury, or a court sitting without a jury, up to a maximum of three times the amount of actual damages but in no case less than four thousand dollars" for each separate offense.  California Civil Code § 52(a).  Neither statute provides for multiplication of statutory damages by the number of barriers encountered.  A person may not be liable for damages under both the Disabled Persons Act and the Unruh Civil Rights Act.  California Civil Code § 54.3(c).

Typically, an award of statutory damages under the Unruh Act requires a plaintiff to prove intentional discrimination.  When a defendant is liable for an Unruh Act claim based on ADA violations, however, the plaintiff need not prove intentional discrimination.  *Lentini v. California Center for the Arts, Escondido*, 370 F.3d 837, 846-47 (9th Cir. 2004); *Hubbard v. Twin Oaks Health and Rehabilitation Center*, 408 F.Supp.2d 923, 932 n. 4 (E.D.Cal. 2004).  Accordingly, Plaintiff is entitled to receive the higher statutory damage award provided by the Unruh Act.

A plaintiff may recover the statutory minimum for each instance that she visited a noncompliant facility even though it was not full accessible and for each instance that a defendant's noncompliance with the ADA and the state laws deterred her from visiting the particular establishment.  *Arnold v. United Artists Theatre Circuit*, 866 F.Supp. 433, 439 (N.D.Cal. 1994); *Feezor v. Del Taco, Inc.*, 431 F.Supp.2d 1088, 1090-91 (S.D.Cal. 2005).   To do so, she must prove each occasion on which she was denied equal access.  *Donald v. Café Royale, Inc.*, 218 Cal.App.3d 168, 183 (1990).  Proof that access was denied may be indirect.  *Botosan v. Paul McNally Realty*, 216 F.3d 827, 835 (9th Cir. 2000).

Plaintiff testified that she was stayed at the Courtyard on January 19, 2009, and in October 2009.  Lema Deposition at 25.  Citibank charge card records provided by Liberty Fellowship documented its payment of the January 19, 2009 stay.  Plaintiff's Further Supplemental Disclosure at 22.  Accordingly, Plaintiff is entitled to statutory damages of $8000.00.

## VI.   <u>Attorneys' Fees and Costs</u>

The ADA authorizes the Court to allow reasonable attorneys' fees to the prevailing party, as well as litigation expenses and costs.  42 U.S.C. § 12205.  Because the allowance of fees and costs is appropriate in this case, the Court directs the Plaintiff to submit a motion for

determination of the appropriate amount under applicable law.  Because much of this case was administered simultaneously with its companion case (*Lema v. Comfort Inn, Merced* (1:10cv-00362-SMS)), the Court will consolidate the two cases and issue a single order determining appropriate fees and costs in the combined cases.

**VII.**   **Conclusion and Order**

This Court hereby ORDERS that

1.      Defendants' motion for summary judgment is DENIED;

2.      Plaintiff's motion for summary judgment is GRANTED;

3.      Plaintiff is entitled to judgment as a matter of law on her claims for violation of the California Disabled Persons Act and the Unruh Civil Rights Act;

4.      Pursuant to California Civil Code § 52, Defendant is order to pay to Plaintiff statutory damages totaling $8000.00;

5.      Plaintiff is entitled to summary judgment on her claim of violation of the Americans With Disability Act;

6.      Plaintiff is directed to prepare and submit to the Court a form of injunctive order on or before April 30, 2013;

7.      Plaintiff is directed to submit her claim for attorneys' fees, expenses of litigation, and costs on or before April 30, 2013.

8.      The Clerk of Court is directed to enter judgment for Plaintiff.


IT IS SO ORDERED.

**Dated:   April 2, 2013**                    _____/s/ Sandra M. Snyder_____
                                              UNITED STATES MAGISTRATE JUDGE