1
2
3
4
5
6
7   # UNITED STATES DISTRICT COURT
8   ## EASTERN DISTRICT OF CALIFORNIA
9
10  GENEVA LEMA,                              Case No. 1:10-cv-00362-SMS

            Plaintiff,
11
12     v.

13  COMFORT INN MERCED, et al.,

14          Defendants.
15  _____

16  GENEVA LEMA,                              Case No. 1:10-cv-01131-SMS

            Plaintiff,
17
18     v.
                                            ORDER GRANTING PLAINTIFF'S MOTION
19  COURTYARD MARRIOTT MERCED,               FOR ATTORNEYS' FEES AND COSTS AND
    et al.,                                   DENYING DEFENDANTS' CROSS-MOTION
                                            FOR SANCTIONS
20          Defendants.
21
22
23
24
25          Following summary judgment in her favor in each of the above-captioned consolidated cases,

26  Plaintiff Geneva Lema seeks attorney's fees and litigation expenses pursuant to state law and 42

27  U.S.C. § 12205 of the Americans with Disabilities Act (the "ADA").  She requests legal fees of

28

                                            1

$430,426.00 and litigation expenses and costs of $56,134.00, for a total amount of $486,580.00,[1] and asks that the Court increase these fees by applying a multiplier enhancement in the range of 1.3 to 2.0. Defendants cross-move for sanctions arguing that Plaintiff's overreaching in her fee application is tantamount to fraud on the Court and that Plaintiff's counsel misrepresented the circumstance of his failure to meet and confer prior to filing his August 4, 2012 summary judgment motions. In the event that the Court does not grant their motion for sanctions and strike Plaintiff's fee application, Defendants maintain that the requested fees and expenses are excessive and argue that enhancing the fees would be inappropriate. As discussed below, the Court denies Defendants' motion for sanctions, denies Plaintiff's motion for enhanced fees, and grants Plaintiff attorney's fees and costs in an amount less than the full amount requested.

## I.     Procedural Background

On February 27, 2010, Plaintiff filed the complaint in *Lema v. Comfort Inn Merced*, 1:10-cv-00362, seeking injunctive relief and damages for violations of the Americans With Disabilities Act of 1990 (42 U.S.C. § 12101 *et seq.*) (ADA); California state disabilities rights laws (California Civil Code §§ 54, 54.1, and 55); and the Unruh Civil Rights Act. Plaintiff sought injunctive and declaratory relief, and treble damages. Defendants answered on April 8, 2010.

On June 22, 2010, Plaintiff filed the complaint in the companion case: *Lema v. Courtyard Marriott Merced*, 1:10-cv-01131-SMS. Because the defendants in the two cases are substantially the same persons and entities, discovery and most other proceedings were consolidated to promote economy.

Following multiple substitutions of counsel in the spring and summer of 2011, Defendants failed to provide timely expert discovery, resulting in the Court's striking Defendants' designation of its expert witness on January 19, 2012. The Court declared the hotel measurements, as determined by Plaintiff's expert Karl Danz, established and accurate for purposes of the continuing litigation.

---

[1]   Plaintiff's actual request of $586,580.00 reflected a $100,000.00 computational error. The Court will use the accurate sum.

On February 3, 2012, Defendants moved to dismiss *Comfort Inn* (1:10-cv-00362) for lack of jurisdiction, arguing that Plaintiff lacked standing for failure to allege the specific ADA deficiencies that deterred her from staying at the Comfort Inn in the two years preceding her filing the complaint, her intent to return to the Comfort Inn, and the relationship of her disability to the alleged barriers. On March 27, 2012, the Court dismissed the complaint with leave to amend, observing that although Plaintiff had testified to the disputed matters in her deposition, the complaint did not allege facts supporting a conclusion that she had visited the Comfort Inn or intended to return. The Court rejected Defendants' contention that the action was barred by the statute of limitations, citing *Pickern v. Holiday Quality Foods, Inc.*, 293 F.3d 1133, 1138 (9th Cir.), *cert. denied*, 537 U.S. 1030 (2002). (In *Pickern*, the Ninth Circuit held that the statute of limitations did not bar an ADA action by a plaintiff who had not visited the subject premises within the limitations period if she had actual knowledge of continuing violations that precluded her access.)

Also on February 3, 2012, Defendants moved to dismiss *Courtyard* (1:10-cv-01131) for lack of jurisdiction, arguing that Plaintiff failed to allege that she had visited the Courtyard and encountered at least one architectural feature that denied her full and equal access to the facilities because of her particular disability. On March 27, 2012, the Court dismissed the complaint with leave to amend, observing that although Plaintiff had testified to the disputed matter in her deposition, the complaint did not allege facts that she had visited the Courtyard and encountered barriers resulting from her particular disability.

After Plaintiff filed first amended complaints in both cases on April 25, 2012, Defendants moved to strike portions of each complaint. The Court denied the motions, noting that Defendants' failure to support their motions revealed their continuing strategy of delay. The Court warned Defendants that additional motions presented for improper purposes, such as harassment, delay, and inflation of litigation costs, would subject them sanctions under F.R.Civ.P. 11.

On the same day, Defendants also moved for a more definite statement in each case, contending that they were unable to connect Plaintiff's alleged disability to the barriers that she alleged that she encountered at each hotel. The Court denied Defendant's motions, noting that first amended complaints were sufficient to apprise Defendants of the claims against them and that the

type of detailed information Defendants sought was more appropriately secured in the course of discovery.

On July 2, 2012, Defendants again moved to dismiss both complaints for lack of jurisdiction. The Court struck the motions and directed Defendants to answer the complaints within ten days. Defendants answered both complaints on July 13, 2012.

On August 2, 2012, Defendants filed another motion to dismiss for lack of jurisdiction. Because Defendants filed this motion to dismiss after filing their answer, the Court ordered that the motion would be deemed a summary judgment motion to be adjudicated according to procedures applicable to motions brought under Rule 56. Plaintiff filed a consolidated motion for summary judgment on August 3, 2012. The Court entered summary judgment for Plaintiff in both cases on April 3, 2013.

## II.   Cross-Motion for Sanctions

Defendants cross-move for sanctions striking Plaintiff's fee request, arguing that Plaintiff's overreaching in her fee application is tantamount to fraud on the Court and that Plaintiff's counsel, Tim Thimesch, misrepresented the circumstances of his failure to meet and confer prior to filing his August 4, 2012 summary judgment motions. Plaintiff did not respond to the cross-motion.

Although the Court agrees that Plaintiff's request for attorneys' fees is excessive, it cannot agree with Defendants' contention that Mr. Thimesch schemed to defraud Defendants or the Court. Despite the suspicions of Defendants' attorney, J.M. Irigoyen, the objective evidence is not sufficient to support a finding that Mr. Thimesch consciously intended to take advantage of Defendants, Mr. Irigoyen, or the Court. In particular, the Court rejects the argument that Mr. Thimesch needlessly protracted an agreed-upon settlement by refusing to provide the amount of attorneys' fees and costs. Since this issue was not contemporaneously brought to the Court for resolution, the Court will not now consider it to be a justification for denying Plaintiff's recovery of any attorneys' fees or costs.

Defendants further contend that Mr. Thimesch's billing entries bely his representations to the Court that he overlooked the scheduling order's requirement that he meet and confer with Mr. Irigoyen prior to filing his August 4, 2012 summary judgment motions. Defendants rely on a number of general billing entries concerning review of the scheduling order, the last of which is

dated August 2, 2011, a year before Plaintiff filed her summary judgment motion.  These entries are not compelling evidence that Mr. Thimesch consciously chose to disregard the meet-and-confer requirement before filing the August 2012 motion.  Discovery sanctions against Mr. Thimesch in an unrelated case (*Tandel v. Kings Arco Arena Ltd. Partnership*, 2:10-cv-03027-LKK-KJN, Doc. 55) do not require a different conclusion, particularly since Defendants apparently misread the sanctions order.  Although the *Tandel* Court sanctioned Mr. Thimesch (along with other counsel not retained in this case) for discovery violations, it admonished the *defendants'* counsel for their failure to meet and confer in late stages of discovery.

Defendants' cross-motion for sanctions is denied.

## III.   Jurisdiction

Yet again, Defendants contend that the Court erred when instead of dismissing the case in response to their February 2012 motions, it allowed Plaintiff to amend the complaint to conform to evidence adduced in the course of discovery.  Raising this issue in opposition to Plaintiff's motion for attorney's fees and costs is procedurally improper.  Further, the Court was well within its discretion in dismissing the defective complaint with leave to amend (*see Warth v. Seldin*, 422 U.S 490, 501-02 (1975)), particularly in light of the advanced stage of the litigation, the evidence of the missing factual elements that had already been disclosed in discovery, and Defendants' more-than-two-year delay before first contending that the complaint failed to allege jurisdictional requirements. The Court will not revisit this issue now.

## IV.   Standard for Allowing Fees and Costs

The complaint alleged violations of the ADA (42 U.S.C. § 12101 *et seq.*); California state disabilities rights laws (California Civil Code §§ 54, 54.1, and 55); and the Unruh Civil Rights Act (California Civil Code §§ 51 *et seq.*).  Section 12205 of the ADA authorizes a court, in its discretion, to "allow the prevailing party, other than the United States, a reasonable attorney's fee, including litigation expenses, and costs."  "[A] prevailing plaintiff under a statute so worded 'should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust.'"  *Barrios v. California Interscholastic Federation*, 277 F.3d 1128, 1134 (9th Cir. 2002), *cert. denied*, 537 U.S. 820 (2002), *quoting Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983).  The California statutes provide

that "the prevailing party in the action shall be entitled to recover reasonable attorney's fees."  Cal. Civ. Code § 55.

## V.   Calculating Billed Attorneys' Fees

### A.   The Lodestar Rate

The Court must determine the amount of attorney's fees and expenses that Plaintiff may recover.  To do so, it must first identify the appropriate hourly rate or "lodestar" for calculating attorney's fees.

Under the lodestar method, a court multiplies the number of hours the attorney reasonably expended on the litigation by a reasonable hourly rate.  *See Hensley*, 461 U.S. at 433; *Ketchum v. Moses*, 24 Cal.4th 1122, 1132 (2001) (expressly approving the use of prevailing hourly rates as a basis for the lodestar rate).  Courts may then adjust the lodestar to reflect specific aspects of the case. *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975), *cert. denied,* 425 U.S. 951 (1976); *Serrano v. Priest*, 20 Cal.3d 25, 48-49 (1977).

In determining an appropriate hourly rate, courts must first determine a reasonable fee based on prevailing market rates in the relevant local community.  *Blum v. Stenson*, 465 U.S. 886, 895 (1984).  A reasonable hourly rate is not calculated by reference to the rates actually charged by the attorney for the prevailing party.  *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1986).  Determining an appropriate local "market rate" is inherently difficult since a private attorney, such as Mr. Thimesch, commands a broad range of hourly fees based on numerous factors including experience, skill, and reputation.  *Blum*, 465 U.S. at 895 n. 11.  The determination is further complicated when, as here, the plaintiff has not negotiated an hourly fee with the attorney who represents her.  *Id*. at 895.

The relevant local community is typically considered to be the forum district: in this case, the Fresno Division of the Eastern District of California.  *See, e.g., Camacho v. Bridgeport Financial, Inc.*, 523 F.3d 973, 979 (9th Cir. 2008).  The fee applicant bears the burden of producing satisfactory evidence that the requested rates are "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation."  *Blum*, 465 U.S. at 895 n. 11.  Relying solely on cases favorable to her attorney in the Northern District of California

6

and claiming that no attorneys in the Eastern District handle ADA cases, Plaintiff has failed to carry the burden of proving that the hourly fee claimed by her attorney approximates the local market rate for private attorneys competent to represent a plaintiff in an ADA suit.

In support of her fee request, Plaintiff includes the "Laffey Matrix," created by the Civil Division of the United States Attorney's Office for the District of Columbia.  The Laffey Matrix is a chart of hourly rates for attorneys of varying experience levels based on the prevailing rates in the Washington, D.C. area.  *Laffey v. Northwest Airlines, Inc.*, 572 F.Supp. 354, 374 (D.D.C. 1983), *aff'd in part, rev'd in part on other grounds*, 746 F.2d 4 (D.C.Cir. 1984), *cert. denied*, 472 U.S. 1021 (1985).  The Laffey Matrix is inapplicable to the determination of market rates in both the Ninth Circuit and the Eastern District.  *See, e.g., Prison Legal News v. Schwarzenegger*, 608 F.3d 446, 454 (9th Cir. 2010); *Fitzgerald v. Law Office of Curtis O. Barnes*, 2013 WL 1627740 at * 2 (E.D.Cal. April 15, 2013), *adopted by* 2013 WL 1896273 (E.D.Cal. May 6, 2013) (No. 1:12-cv-00071-LJO-GSA).

The Court may rely on its own familiarity with the local legal market and knowledge of customary rates.  *Ingram v. Oroudjian*, 647 F.3d 925, 928 (9th Cir. 2011).  Courts within the Eastern District have recently set reasonable fee awards for experienced ADA attorneys practicing in the Fresno Division at $250.00 to $350.00 per hour, with the majority being set at $300.00 per hour. *See, e.g,. Fitzgerald*, 2013 WL 1627740 at *4; *Moore v. Cisneros*, 2012 WL 6523017 at *6 (E.D.Cal. Dec. 13, 2012) (No. 1:12-cv-00188-LJO-SKO); *Moore v. Ruiz*, 2012 WL 3778874 at * 6 (E.D.Cal. Aug. 31, 2012) (No. 1:11-cv-2159-LJO-GSA); *Gutierrez v. Onanion*, 2012 WL 1868441 at *2 (E.D.Cal. May 22, 2012) ( No. 1:11-cv-00579-SMS).  In the most recent Eastern District case awarding legal fees to a client represented by Plaintiff's attorney, Timothy Thimesch, a Sacramento Division judge set his hourly fee at $250.00.  *Riker v. Distillery*, 2009 WL 4269466 at *2 (E.D.Cal. Nov. 25, 2009) (No. 2:08-cv-00450-MCE-JFM).  (Defense counsel, who candidly represented to the Court that he had no prior experience in ADA litigation, disclosed that his hourly rate is $250.00.) Despite Mr. Thimesch's enthusiastic account of his qualifications, the Court has observed nothing in his presentation and management of this case that would rank him above or below the median fee.

The Court finds that reasonable hourly compensation for Mr. Thimesch in this case is $300.00 per hour.  Given the 558.27 hours claimed, the total base fee is reduced from $430,426.00 to $167,481.00.

**B.**     **Correcting Plaintiff's Time Claims**

In reviewing Plaintiff's spreadsheet of the time that Mr. Thimesch spent litigating the case, the Court was surprised to see a discrepancy between the time billed as individual entries (the sixth column of the spreadsheet, entitled "Time"), which totaled 524.975 hours, and the time billed as daily totals (the first column of the spreadsheet, entitled "Control for Daily Billed"), which totaled 522.775 hours.  Instead of reconciling these different sums, Mr. Thimesch simply stated, "Deviation from Actual Due to Small Tabulation Error."  *See* Doc. 109-4 at 153.  To ensure the accuracy of the totals set forth, the Court needed to recalculate the total time set forth on the report.  It determined that the correct amount of time billed for attorney services totaled 514.3275 hours and that the correct amount of time billed by attorneys at the "clerical rate,"[2] totaled 26.4015, for total hours of 540.729.

Similarly, Plaintiff miscalculated her total request for fees, expenses, and costs, adding $430,426 to $56,134 (*see* Doc. 109-1 at 29), and reaching a total of $586,580.00 instead of $486,580.00.  The Court recognizes the apparent overcharge to be a computational error and performs its analysis using the correct sum.

**C.**     **Reasonableness of Time Claimed**

Having determined the appropriate hourly fee, the Court must next determine whether the number of hours billed was reasonable.  Defendants argue that claims in multiple categories must be reduced or eliminated.

**1.**     **Clerical Work**

Attorneys and paralegals may not legitimately bill for clerical or secretarial work.  *Missouri v. Jenkins*, 491 U.S. 274, 288 n. 10 (1989).  "'It is appropriate to distinguish between legal work, in the strict sense, and investigation, clerical work, compilation of facts and statistics and other work which can often be accomplished by nonlawyers, but which a lawyer may do if he has no other help

---

[2] Plaintiff does not provide an explanation for the times used for work that Mr. Thimesch performed at a clerical rate.  It appears that the actual time was reduced by some unspecified factor.

available.'"  *Id.*, *quoting Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717 (5th Cir. 1974).  "[T]he court should disallow not only hours spent on tasks that would normally not be billed to a paying client, but also those hours expended by counsel on tasks that are easily delegable to non-professional assistance."  *Spegon v. Catholic Bishop of Chicago*, 175 F.3d 544, 533 (7th Cir. 1999) (*internal quotations omitted*).  Clerical work may not be billed since it is part of a law firm's overhead.  *Jones v. Armstrong Cork Co.*, 630 F.2d 324, 325-26 (5th Cir. 1980).  *See also Nadarajah v. Holder*, 569 F.3d 906, 921 (9th Cir. 2009) (reducing paralegal bills to account for erroneous billing of clerical work performed by paralegal).

Plaintiff's billing spreadsheet sets forth 26.4015 hours performed by Plaintiff's attorney, but ostensibly billed at a clerical rate.  Even at a reduced rate, these hours may not be included within an award of attorneys' fees.

In addition, Defendants contend that an additional 68.5 hours billed but not designated as clerical work are also non-compensable clerical work.  Mr. Irigoyen lists the billing entries to which Defendants object in his declaration (Doc. 117-1 at 7-8).  Defendants' contention is largely correct. Having carefully reviewed the objected-to entries, the Court calculates additional non-compensable clerical time as follows:

Since Plaintiff's attorney billed the following entries separately at a clerical rate, they have already been disallowed and may not be counted twice: 49, 51, 250, 1167, 1610, 1623, 1787, 2182, 2236, 2316, 2342, 2450, and 2467.  These line items total .1625 hours.

The Court disagrees with Defendants' conclusion that the following line items are non-compensable clerical entries: 38-39, 41, 69-71, 134, 200-10, 218, 224-25, 232, 296, 334, 392-93, 451-52, 460, 564-65, 570, 732-33, 789-90, 842-43, 936-37, 1031-32, 1232-33, 1271-72, 1492-93, 1604-05, 1624, 1643-44, 1647-48, 1706-07, 1755-56, 1785-86, 1792-93, 1809-10, 2438-39, 2441-45, 2451-52, 2460-61, 2463-64, 2481-82, 2494-95, 2510-11, 2575, 2622-23, 2645-46, 2647-48, 2695-96, 2711, 2742-45, 2752-53, and 2772-75.  Although each of those line items superficially appears to relate to clerical work, the Court will permit compensation for those entries since each involved an infrequent or novel activity, such as evaluating participation in the Court's settlement week or filing procedures at the court of appeals, or required direct interaction with the client, such

as to explain ongoing activity in the case or to secure the client's input for a strategic decision. These entries total 16.175 hours.

Because the fee request addressed both of the consolidated cases, Plaintiff's attorney frequently split the time attributable to an activity relating to both cases, assigning half of the time to each of the two cases.  In several instances, Defendants appropriately objected to a clerical entry in one case but failed to object to the corresponding clerical entry in the other case.  The Court has identified such omissions as line items 691, 950, 1463, 1499, 1505, 1508, 1875, 1892, 2234, 2312, 2458, 2638, 2712, and 2803.  Combined, these entries add 1.1 hour of non-compensable time.

The Court has independently totaled the additional line items which are to be disallowed as clerical activity to be 51.65 hours, plus 1.1 hour for the omitted line items, for a total of 52.75 non-compensable hours.  Combined with the 26.4015 billed as clerical work, the claim for attorneys' fees must be reduced by 79.1515 hours attributable to non-compensable clerical work.

Finally, careful review of the billing sheets submitted by Plaintiff's attorney reveals numerous additional entries of work not identified by Defendants, but appropriately reclassified as clerical.  In light of the unreasonable time that would be required for the Court to set forth each such entry and recalculate total billable hours, the Court will instead reduce the total attorney's fees by five per cent (5%).

### 2.     **Pre-Litigation Work**

Arguing that Plaintiff may not recover fees for time expended one-to-three years before filing of the complaint (line items 1-33), Defendants rely on case law addressing attorney fee awards for hours spent in optional administrative proceedings (*Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 561 (1986), and in pre-litigation investigative activity (*Sierra Club v. U.S. E.P.A.*, 625 F.Supp.2d 863, 869-70 (N.D. Cal. 2007).  Both cases accept the standard set forth in *Hensley* (461 U.S. at 432) that a prevailing plaintiff is entitled to compensation for time reasonably expended on the litigation.  *Sierra Club*, 625 F.Supp.2d at 869.  Time reasonably expended on litigation is that which is "useful and of a type ordinarily necessary to secure the final result obtained from the litigation."  *Delaware Valley*, 478 U.S. at 561.  A court applies the *Hensley* standard as a matter of its discretion.  *Delaware Valley*, 478 U.S. at 561.

Outside questions of administrative proceedings and pre-litigation investigation, a court properly may include in an allowance for attorneys' fees time spent drafting the pleadings and developing the theory of the case. *Webb v. Board of Educ. of Dyer County*, 471 U.S. 234, 243 (1985). The question is whether the activity was a necessary precursor to filing the lawsuit. *Sierra Club*, 625 F.Supp.2d at 870. The court should determine what work was necessary and exclude time spent that was "merely relevant." *Id.*

The entries to which Defendants object span slightly more than two years, from an initial interview of Plaintiff on April 5, 2007, through June 30, 2009, when Plaintiff's attorney researched *Chapman v. Pier 1*, 2006 WL 1686511 (E.D.Cal. June 19, 2006) (No. 1:04-cv-01339-LKK-CMK), *rev'd,* 571 F.3d 853 (9th Cir. 2009). On August 22, 2007, Plaintiff put the attorneys' efforts on hold. More than half of the entries to which Defendants object have already been disallowed as non-compensable clerical time (line items 8-11, 17-25, 27, and 29-31).

Despite the time that elapsed during the period in which Plaintiff put the project on hold, the Court finds little objectionable in the remaining line items, nearly all of which were reasonably necessary to secure information, evaluate Plaintiff's case, and prepare the complaint for filing. For the most part the preparation did not become stale since the efforts were not duplicated prior to filing the Comfort Inn complaint on February 27, 2010. Nonetheless, the Court agrees with Defendants regarding the 7.9 hours billed for drafting of the complaint, which despite the addition of information specific to Plaintiff's case, was largely a boilerplate form. The Court reduces the time attributable to drafting the complaint (line 15) by approximately one-half, to four hours. *See Duran v. Corte Madera Inn Best Western*, 360 F.Supp.2d 1057 (N.D.Cal. 2005) (awarding .5 hours for drafting a complaint substantially similar to other complaints in attorney's ADA practice); *Payne v. Bay Area Rapid Transit Dist.*, 2009 WL 1626588 (N.D. Cal. June 5, 2009) (No. C 08-2098 WDB) (awarding three hours for drafting a complaint largely composed of boilerplate).

The Court is baffled by line item 26, billing 7.5 hours for a "complete evaluation survey" and associated activities. Although the description suggests that this activity was not a duplicate inspection of the Comfort Inn, it offers no insight into the nature of the activity. The Court disallows line item 26, consisting of 7.5 hours, in total.

The last two entries (line items 32 and 33), consisting of legal research in two very basic areas of disability rights law, are dated in January and June 2009.  These entries bear no relation to any other activity in the case, which otherwise appears still to be on hold.  Since no briefing was then underway, the reference in line item 33 to use of the research in a memorandum of points and authorities suggests that these entries may belong to another case.  Further, the very general description of the research relates to basic knowledge expected to be well known by an experienced practitioner holding himself out as especially skillful in ADA cases as Plaintiff's attorney does.  The Court will disallow line items 32 and 33, which include 1.2 hours.

As a result of these adjustments, hours billed for the period before Plaintiff filed her complaint are reduced by 12.6 hours.

### 3.      Tortious Disclosure of Non-Public Information

Defendants contend that the Court should disallow 1.3 hours of attorney time in which Mr. Thimesch tortuously disclosed non-public information to attorney Brenda J. Pannell (line items 2039-40, 2042-45, 2048-53, 2490-91, and 2813-14[3]).  Other than noting that Defendants are considering a lawsuit against both attorneys, Defendants provide neither insight not authority to support this request.

Attorney Pannell apparently represented an unrelated plaintiff in an employment action against one or more of the Defendants (*see* line items 2044 and 2045).  According to the time sheets, Plaintiff's attorney and Pannell apparently shared some sort of information relating to Defendants' assets and misrepresentation of their net worth. No factual evidence in the time sheets or in Defendants' brief or declarations permits this Court to conclude that Plaintiff's attorney tortuously disclosed non-public information in the course of his conferences with Ms. Pannell.  In the absence of a full explanation, the Court will not disallow the amounts claimed for conferences with Ms. Pannell based solely on Defendants' assertion that the attorneys exchanged non-public information.

### 4.      Plaintiff's Failure to Meet and Confer

Defendants contend that since Plaintiff's attorney failed to meet and confer before filing his summary judgment motion, the Court should disallow the full 67.9 hours billed for summary

---

[3] Defendants do not object to hours attributed to correspondence with Ms. Pannell at line items 2809 and 2811.

12

judgment work as well as the 1.4 hours spent defending Defendants' resulting motion for sanctions. In this Court's prior orders denying Defendants' motions for sanctions based on the failure of Plaintiff's attorney to meet and confer before filing summary judgment motions, the Court stated, "Although Mr. Thimesch's case management skills fell short of perfection in this instance, Plaintiff's motions for summary judgment met the requirements of the Scheduling Order by setting forth a statement of good cause for the failure to meet and confer." *See* Doc. 91, Case No. 1:10-cv-00362. Defendants' renewed request for sanctions is denied.

### 5.   Refusal to Produce Billing Records

In denying Defendants' cross-motion for sanctions above, the Court rejected Defendants' argument that Plaintiff needlessly protracted an agreed-upon settlement by refusing to provide the amount of attorneys' fees and costs.  Noting that this issue was not contemporaneously brought to the Court for resolution or mediation, the Court refused to deny Plaintiff's recovery of any attorneys' fees or costs relating to the summary judgment motions.  Defendants now argue that the Court should deny 5.3 hours attributable to settlement negotiations resulting from Defendants' insistence on resolving the attorney fee amount before they would agree to settle and Plaintiff's failure or refusal to produce its fee records.  Their contention, unsupported by legal authority, has no merit.

Throughout settlement negotiations, parties to litigation retain the ability to negotiate the settlement terms and ultimately, to refuse to settle.  Defendants did so when Plaintiff refused to provide the attorney billing records that they demanded as a condition of settlement.  Had Defendants elected, they could have accepted the substantive aspects of settlement to which both sides had agreed and immediately submitted the question of attorneys' fees to the Court, thus terminating Plaintiff's need for continuing legal services in prosecuting her case and limiting the ultimate amount of attorneys' fees.  Defendants did not do so.  In the alternative, Defendants could have brought the impasse on attorneys' fees to this Court for mediation of the impasse.  They did not do so.

The Court will not disallow Plaintiff's attorney's fees incurred in the continued dispute between the parties.

///

### 6. __Travel Time__

Defendants contend that because Plaintiff failed to establish that Fresno attorneys customarily bill and collect fees for their travel time, the eleven hours that Plaintiff's attorney billed for travel time are not compensable.  The contested charges appear as line items 1, 1826-27, and 1873-74.

In the Ninth Circuit, travel time to attend meetings, depositions, and court may be billable if local attorneys customarily bill their clients for travel time.  *Chalmers v. Los Angeles*, 796 F.2d 1205, 1216 (9th Cir. 1986), *amended*, 808 F.2d 1373 (9th Cir. 1987).  Generally, expenses that attorneys normally bill to their fee-paying clients are compensable in cases in which the prevailing party is entitled to recover legal fees.  *Davis v. Mason County*, 927 F.2d 1473, 1487-88 (9th Cir.), *cert. denied*, 502 U.S. 899 (1991) (*superseded by statute on other grounds*).  If the prevailing party has not established that billing travel time is customary among local attorneys, however, the court may disallow billed travel time.  *Jankey v. Beach Hut*, 2006 WL 4569361 at *5 (C.D.Cal. Dec. 19, 2006) (No. CV 05-3856 SVW (JTLx)).  "The touchstone in determining whether hours have been properly claimed is reasonableness."  *Davis*, 976 F.2d at 1543.

"[I]n this district[,] attorney travel time has customarily been compensated at an attorney's normal hourly rate."  *Jones v. County of Sacramento*, 2011 WL 3584332 at * 15 (E.D.Cal. Aug. 12, 2011) (No. 2:09-cv-1025-DAD) (setting forth a listing of Eastern District cases in which the Court awarded fees for documented travel time).  The Court sees little reason to depart from the general practice here, particularly with regard to the travel time associated with attending and defending Plaintiff's deposition (line items 1873-74).  Although attending meetings in a client's home is not usual, the Court cannot conclude that it is unreasonable, particularly since, in her deposition, Plaintiff testified to her increased confidence and mobility at home, where she was much less likely to fall or otherwise injure herself.  A disabled client's electing to meet her attorney in her home implicates the same cost-benefit analysis that a business person might employ in concluding that compensating an attorney to come to the business place is more cost effective than interrupting the

///

///

14

client's day or transporting multiple personnel to the attorney's office.  The Court will not second-guess Plaintiff's election to meet with her attorney in her home.

The Court will not disallow attorneys' fees attributable to Mr. Thimesch's travel time.

### 7.    Miscellaneous Line Items

#### a.    Unexplained Work

Although the detailed articulation of Plaintiff's research set forth in line items 2762-71 has been redacted under the work product exception, the line items adequately indicate that the Westlaw research related to Defendants' assets and to appellate jurisdiction.  The Court will allow these line items.  Line items 1808-08 have previously been disallowed as clerical.

#### b.    Unnecessary Work

Line item 205, consisting of research regarding the requirements for introducing certified records into evidence, was reasonably necessary in the context of Plaintiff's securing and reviewing government records relating to the construction of the Comfort Inn and the Marriott.

Line items 355-56, totaling .2 hours of research regarding the standards of proof for attorney's fees, was not reasonably necessary since an attorney with the degree of professional experience represented by Mr. Thimesch should have been well aware of the appropriate standards for maintaining records of his services for billing purposes.  The Court will disallow this entry.

Since any settlement negotiations were then well in the future, line items 571-72, consisting of review of an article regarding ADA lawsuits, was in the nature of continuing legal education rather than specifically relating to the cases for which this fee application is made.  The Court will disallow .6 hours spent reading the article.

Plaintiff's status report to "co-counsel Gene Farber" (line items 1271-72) was not reasonably necessary.  Nothing in the record discloses that Mr. Farber, who is not listed as co-counsel on the Court's docket, had any responsibilities in this case.  Indeed, in an e-mail reported at line item 570, Mr. Farber advised Plaintiff's attorney that he did not intend to prepare a bill on the Courtyard case. The Court will disallow .2 hours.

///

///

Once Plaintiff's attorney had prepared a statement of undisputed facts, re-configuring it to include space for Defendants' response could have been managed by clerical staff.  The Court will disallow 1.2 hours reported at line items 2172-73.

Receiving and analyzing the Court's summary judgment orders in speculation of a possible appeal was not reasonably necessary to this case.  The Court will disallow 1.7 hours reported at line items 2494-97.

In total, the Court disallows 3.9 hours attributable to Defendants' miscellaneous objections.

### 8.    **Block Billing**

Block billing is a time-keeping method in which an attorney enters the total daily time spent working on the case, rather than itemizing the time spent on each specific task.  *Welch v, Metropolitan Life Ins. Co.*, 480 F.3d 942, 945 n. 2 (9th Cir. 2007).  Defendants contend that line item 157, in which Mr. Thimesch billed 4.8 hours both for drafting the Marriott complaint and for performing the non-compensable task of preparing a memorandum to an outside provider regarding service should be disallowed as impermissible block billing.  Although Mr. Thimesch carelessly combined two items is a single entry, line item does not strictly fit the definition of block billing. Further, Mr. Thimesch generally did not block bill his time.

Because the relative time spent on the two tasks, taken in the context of the bill as a whole, is abundantly clear, the Court declines to disallow it in full.  The Court will disregard the preparation of the memo, a frequent entry typically billed as .1 hour or less.  Since Mr. Thimesch had already prepared a complaint against Defendants in the Comfort Inn case, however, the amount of time attributable to his preparation of a complaint that required only limited changes to reflect the conditions at the Marriott is excessive.  The Court will allow 2.4 hours for preparation of the complaint.

### 9.    **Mr. Farber's Time**

With regard to the Comfort Inn, attorney Gene A. Farber billed Plaintiff $3,735.00, consisting of 8.3 hours at $450.00 per hour.  Peculiarly, his bill is included as part of Plaintiff's costs (Doc. 109-10), not as attorneys' fees, even though Mr. Thimesch elsewhere attempts to characterize Mr. Farber as "co-counsel," and the time ostensibly represents fees for Mr. Farber's services as an

attorney.  Mr. Farber billed .2 hours for "case review," 8.00 hours for "site visit, inspection, and travel," and .1 hour to "review and consider email regarding site visit and early settlement conference proposal."  The record does not disclose Mr. Farber's role in the litigation, but twelve minutes for case review and six minutes to consider the site visit and early settlement proposal do not suggest a substantial or meaningful role.  Further, the record includes no information whatsoever that would permit the Court to determine an appropriate hourly fee for Mr. Farber's services.

In light of his limited role in the case, billing a full day to attend the February 26, 2010 site inspection appears unnecessary.  His duplicative presence has no apparent purpose.  Nor is there any apparent reason for Mr. Farber's brief case review (12 minutes) or six-minute review of an e-mail.

The Court will disallow, in full, attorney's fees billed by Mr. Farber.

### D.    Expert Witness Fees

Although Plaintiff has included the fees of expert witness Karl Danz and Barry Atwater as part of her request for costs and expenses, expert witness fees are properly analyzed as part of the attorney's fee award.  *Robins v. Scholastic Book Fairs*, 928 F.Supp. 1027, 1034 (D.Or. 1996), *aff'd*, 116 F.3d 485 (9th Cir. 1997) .  *See* 42 U.S.C § 1988(c) (providing that a court, in its discretion, may award expert fees as part of the attorney's fees).  Plaintiff's construction expert, Karl Danz, billed $4,993.33 for his services regarding the Comfort Inn and $5,789.58 for his services regarding the Marriott, for a total of $10,782.91.  Design expert, Barry Atwood, evenly split his fees, billing $9,299.92 for each project for a total of $18,599.84. Defendants do not object to the experts' time. The Court will allow the full amount of $29,382.75.

### F.    Summary

The Court disallows 98.0515 hours billed by Mr. Thimesch, attributable to disallowances of 79.1515 hours, clerical; 12.6 hours, pre-litigation; 3.9 hours, miscellaneous; and 2.4 hours, block billing.  The Court disallows all amounts billed by Mr. Farber but requested as costs.  Following the disallowances set forth above, there remain 442.6775 attorney hours at $300.00 per hour, yielding attorney's fees of $132,803.25.  Reduced by five per cent (5%) to correct for numerous additional clerical billing entries, attorney's fees total $126,163.08.  In addition, the Court allows $29,382.75 for expert fees.  Total allowed fees are $155,545.83.

## VI.    **Multiplier**

Plaintiff requests that the total attorney's fees be increased by a multiplier in the range of 1.3 to 2.0, as authorized by Cal. Code of Civil Procedure § 1021.5.  She contends that the disabled public will experience significant benefits as a result of the modifications to Defendants' hotels.

Federal law does not permit enhancement of fees for contingency risk in actions brought under fee-shifting statutes such as the ADA.  *City of Burlington v. Dague*, 505 U.S. 557, 566 (1992). California law authorizes the use of multipliers to adjust the lodestar figure to ensure that the figure approximates the fair market value in the particular case.  *Ketchum v. Moses*, 24 Cal.4[th] 1122, 1132 (2001).  If a party prevails under both federal and state law, the district court may apply the more generous state law provisions, including a multiplier, when calculating the fee award.  *Mangold v. California Public Utilities Comm'n*, 67 F.3d 1470, 1479 (9th Cir. 1995).

After a court has determined compensation due to the prevailing party's attorney based on time and rate, the court may augment or diminish the allocated fees based on various considerations, including (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill needed to perform the legal service properly; (4) the preclusion of other employment because of the attorney's accepting the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the attorney's experience, reputation, and ability; (10) the case's desirability or undesirability; (11) the nature and length of the professional relationship of attorney and client; and (12) awards in similar cases.  *Kerr*, 526 F.2d at 69-70.

"Under California law, a plaintiff merits an upward adjustment in extraordinary circumstances."  *Chabner v. United of Omaha Life Ins. Co.*, 1999 WL 33227443 at *6 (N.D. Cal. Oct. 12, 1999) (No. C-95-0447 MHP).  A strong presumption exists that the lodestar is a reasonable fee which should be enhanced only in rare and exceptional cases.  *Pennsylvania v. Delaware Valley*, 487 U.S. at 565.  This case is neither extraordinary, rare, nor exceptional.

When a trial court considers whether to implement a fee enhancement, it also takes in to account such factors as contingent risk and extraordinary skill.  *Loretz v. Regal Stone, Ltd.*, 756 F.Supp.2d 1203, 1216 (N.D.Cal. 2010).  Contingent risk multipliers are intended to "sweeten the

18

pot," in order to attract private attorneys to cases of significant societal importance that bear the risk of contingent loss. *See, e.g., Crommie v. State of Cal. Public Utilities Comm'n*, 840 F.Supp. 719, 725-26 (N.D.Cal. 1994). Application of a fee adjustment, whether enhancement or diminution, is intended to fix the fee in a particular case at its fair market value. *Id.* Both the necessity and the financial burden of private enforcement must be sufficient to require application of a multiplier to make the fee award appropriate. *Wilson v. San Luis Obispo County Democratic Central Comm.*, 192 Cal.App.4th 918, 926 (2011). Determining whether to increase legal fees using multiplier requires a court to make a "value judgment whether it is desirable to offer the bounty of a court-awarded fee in order to encourage litigation of the sort involved in [the case]." *Wilson*, 192 Cal. App. 4th at 926-27. A court also retains the discretion to adjust the fee downward or to deny an unreasonable fee altogether when a proposed fee appears excessive. *Ketchum*, 24 Cal.4th at 1138.[4]

"Once the court considers whether to enhance for contingency, the decision whether and to what extent this factor will affect the fee ultimately awarded is a matter within the district court's discretion." *Widrig v. Apfel*, 140 F.3d 1207, 1210 (9th Cir. 1998), *quoting Allen v. Shalala*, 48 F.3d 456, 460 (9th Cir. 1995). In *Widrig*, the Court affirmed the district court's decision not to enhance for contingency. The Court emphasized that the district court had fully considered the *Kerr* factors and the arguments of counsel, before rejecting the request to increase the lodestar amount since the case was "a straightforward social security case." *Id. See also Straw v. Bowen*, 866 F.2d 1167, 1170 (9th Cir. 1989) (finding that contingency risk did not justify applying a multiplier in the absence of any unusual risk).

Except for Defendants' extensive delaying tactics, each of these cases was nothing more than another straightforward ADA case. Neither presented a challenging substantive issue. The effect of Defendants' delaying tactics is adequately addressed by this Court's lodestar award multiplied by the additional time required by Defendants' strategy of delay.

Nor is a multiplier required to attract attorneys to litigate ADA claims in the public interest, as Plaintiff argues. Even a quick glance at the docket of this Court reveals the existence of an active

---

[4] The Court has already reduced the overall amount of attorney's fees to appropriately address the excessive billing of clerical tasks at Mr. Thimesch's rate.

and prosperous plaintiff's bar specializing in the civil rights of disabled persons, particularly with regard to access issues.

The lodestar fully compensated Plaintiff's attorney at the approximate market rate.  No multiplier is warranted.

**VII.**   **Costs and Expenses**

Excluding her requests for the fees of Mr. Farber and the expert witness fees of Mr. Danz and Mr. Atwood, Plaintiff moves for costs and expenses in the total amount of $17,995.00.  Defendants object to charges for the travel, meals, and lodging of Mr. Thimesch, Mr. Farber, and expert witness Karl Danz, as well as various delivery and service fees.

Pursuant to 42 U.S.C. § 12205, a plaintiff may recover reasonable litigation expenses and costs.  Litigation expenses include the same out-of-pocket expenses that may be recovered under 42 U.S.C. § 1988.  *Robins*, 928 F.Supp. at 1037.  Under § 1988, a plaintiff may recover those out-of-pocket expenses that "would normally be charged to a fee-paying client." *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994).  Such expenses include reasonable photocopying, paralegal expenses, secretarial assistance, travel, telephone, statutory non-expert witness fees, and photography enlargements.  *Robins*, 928 F.Supp. at 1036 n. 14.  Since expert witness fees are appropriately analyzed as part of attorney's fees, amounts attributable to expert fees, as well as attorney's fees billed by Mr. Farber, were analyzed in the prior section evaluating Plaintiff's fee claim.

Defendants object to substantial portions of Plaintiff's claimed fees and costs.  Because Plaintiff submitted her costs in the form of a disorganized stack of invoices and check registers to be cross-checked against ill-defined categories in her fee request, without providing any explanation or justification for any individual charge, both Defendants and the Court had to attempt to assess the reasonableness of individual claimed expenses by cross-checking each claimed sum against the attorney fee line items and the record as a whole.  In many cases, substantiating the expense or evaluating its reasonableness or both was impossible.  As a result, substantial portions of the fees and costs claimed must be disallowed.

///

///

20

### 1.   Filing fees

Plaintiff includes three invoices for $350.00 federal court filing fees for the two cases.  Since two of the invoices refer to the same filing fee for the Marriott, on the same date, the Court allows $700.00 in filing fees for the two complaints.

### 2.   Fees for Governmental Searches and Copies

The Court allows $546.00 for certified documents obtained from the County Clerk ($20.00) and for records produced by the Merced City Clerk in response to subpoena ($526.00).

### 3.   Eddings Attorney Services

Plaintiff submits invoices totaling $1,646.00 for document copying, service of Defendants, and delivery of various documents to the Court and to Defendants' counsel.[5]  Defendants object to $394.90 attributable to unnecessary deliveries to defense counsel and of courtesy copies to the Court. Because Defendants identify the invoices only by amount, in several cases, the Court is unable either to identify which of multiple invoices with the same amount or to identify an invoice in the amount listed.  In addition, the Court is unable to discern Defendants' reasoning in objecting to some invoices for delivery of courtesy copies or materials to defense counsel, but not to others.

The Court has cross-checked and confirmed the validity of each instance of copying or delivery or both.  Although the Court concedes that certain deliveries may have been satisfactorily accomplished by alternate, less expensive means, it declines to find Plaintiff's business management decisions in this category unreasonable.  The Court will allow copying, service, and delivery expenses totaling $1,646.00.

### 4.   Expert Reports

The Court will allow $3,828.19 in expenses paid to Mr. Danz for production of the two expert reports.

### 5.   Telephone Conferencing

The Court will allow $13.67 attributable to charges for telephone conferencing.

///

///

---

[5] In reviewing the invoices submitted as expenses, the Court omitted all duplicate invoices, defined as invoices seeking a second or third payment for delivery of the same documents on the same party on the same day.

### 6.     Transcription

The Court will allow charges of $1166.96 attributable to the deposition transcripts of Plaintiff, Defendant Kasturai Lal, and Defendant Edward Anthony, and to the transcription of a meet and confer session dated September 22, 2011.

### 7.     Legal Research

Defendants object to an unidentified $60.00 Pacer charge and Westlaw charges totaling $1,503.25, but do not explain the basis for these objections.  Legal research expenses are typically reimburseable.  *In re Toys R Us—Delaware, Inc.—Fair and Accurate Credit Transactions Act Litigation*, 295 F.R.D. 438, 469 (C.D.Cal. 2014).   After reviewing the Westlaw invoices and eliminating duplications, the Court finds that Westlaw charges totaled $6,530.40.  The total Pacer charges identifiably linked to the cases at issue here total $24.30.  Allowable legal research charges total $6,554.70.

### 8.     Copying and Printing

Plaintiff's sole documentation of printing and copying costs consists of a redacted spreadsheet that apparently records total pages of copying and printing.  No cost figure is attached to any of the apparent totals. When expense reimbursement requests are inadequately supported, the Court may reduce or eliminate the expense in its discretion.  *Wales v. Jack M. Berry, Inc.*, 192 F.Supp.2d 1313, 1330 (M.D. Fla. 2001).  The Court disallows copying and printing costs as inadequately established.

### 9.     Express Shipment

After eliminating duplicate invoices and invoiced amounts that could not be linked to the subject cases, the Court will allow express shipment charges from Federal Express totaling $58.38.

### 10.     Lodging

Plaintiff requests total lodging expenses of $1,075.66.  Excluding a five night hotel stay in September 2011, which will be analyzed separately below, documentation, including hotel invoices and law firm check registers totals $598.88.  Although Plaintiff also submits multiple parking claims slips, the Court disallows any additional charges that may be associated with these claim slips as insufficiently documented as to date and amount.

Defendants object to allowing the hotel charges, asserting that Mr. Thimesch lived close enough to Merced to have commuted there from his home in Walnut Creek, California.  The Court rejects that argument for two reasons.  First, Mr. Thimesch's office is approximately 120 miles from the hotel properties, which is not an inconsequential distance when an inspection or other activity ends in the evening and resumes the next morning.  Mr. Danz's office in Santa Rosa, California, is approximately 180 miles from the hotel properties.   Allowing the room expense is more compelling when, in addition to Mr. Thimesch, Mr. Danz, or both using the room before continuing their professional activity the following day, Mr. Danz secured the room to allow him to measure it and analyze its layout as part of his accessibility report.

The record is clear that the Comfort Inn room was used for the preliminary inspection on August 15, 2007, when Mr. Danz initially measured and analyzed it.  The Court will allow $97.90 for that date.  Similarly, the Court will allow $98.99 posted on March 1, 2010, for the preliminary inspection of the Comfort Inn on February 27, 2010, and $140.19 posted on May 16, 2010, for the inspection of the Courtyard Marriott.  Since Mr. Thimesch bills a single day for the Courtyard Marriott inspection, the Court will disallow the second night's charge of $119.90.  Finally, the Court will allow a charge of $141.90 for the June 13, 2010 inspection of Room 100 at the Courtyard Marriott.

In sum, the Court allows $478.98 for hotel charges, excluding the September 2011 charges that will be discussed at subsection 12 below.

### 11.   Meals

Meals are among legal expenses that are subject to reimbursement.  *In re Toys R Us—Delaware*, 295 F.R.D. at 469.  Excluding meals associated with the September 2011 stay at the Doubletree, which is analyzed at subsection 12 below, Plaintiff requests $656.47 for various meals.[6]

Four invoices, totaling $128.07, are dated August 15-16, 2007.  As noted previously, Mr. Thimesch and Mr. Danz conducted a preliminary inspection of the Comfort Inn on August 15, 2007. The Court will allow the expense of a two-guest, late evening meal at Denny's, totaling $20.29.  For August 16, 2007, the Court disallows a morning breakfast at Starbucks ($9.45) and a mid-afternoon

---

[6] In some cases, Plaintiff submitted multiple invoices for the same meal.  The Court includes the amount attributable to each such meal only once.

lunch at Wellington Station ($39.54), both located in Turlock, California, since the Wellington Station receipt notes that expense to be associated with an inspection trip for the Holiday Inn, Turlock, California.  The Court also disallows the August 16, 2007 evening meal at Red Lobster in Modesto, California ($58.79), which bears no apparent relation to the prior day's inspection.

Mr. Thimesch reports two charges, which cleared March 1, 2010, at PJ's ($75.00) and Big Bubba's ($79.00), both in Merced, California, by submitting his bank statement.  Since these expenses appear to be associated with the reinspection of the Comfort Inn on February 27, 2010, the Court will allow $154.00.

Similarly documenting expenses with a photocopy of his bank statement, Mr. Thimesch reports $132.00 at Bishops on May 16, 2010, and $42.42 at O'Ryleigh's Tavern on May 17, 2010. Since these expenses appear to be associated with the inspection of the Courtyard Marriott Merced, the Court will allow $174.42.

Mr. Thimesch reports spending $6.98 at the McDonalds in Rio Vista, California, on February 14, 2012.  Since Rio Vista is located between Mr. Thimesch's office in Walnut Creek and Sacramento, this expense is not likely attributable to the subject cases.  The Court will disallow this expense.

On July 31, 2012, Mr. Thimesch and Mr. Atwood traveled to Merced to re-inspect both hotels in preparation for Mr. Atwood's declaration to be submitted with Plaintiff's summary judgment motion.  The Court will allow a meal charge at Carrow's in Merced of $33.00.

On September 30, 2012, Mr. Thimesch and Mr. Atwood traveled to Merced to reinspect the hotels following Defendant's declaration that all conditions had been remediated.  The Court will allow $39.00 for their meal at the Branding Iron in Merced, California.

On October 3, 2012, Mr. Thimesch and Mr. Atwood incurred a bill of $121.00 for lunch at Eleve in Walnut Creek, California, where Mr. Thimesch's office is located.  The bill notes that they ate there in conjunction with their preparation of the reply brief to the pending summary judgment motion.  The Court finds this charge to be both excessive and not reasonably necessary to preparation of a reply brief.  It is not likely that Mr. Thimesch would have billed this amount to his Plaintiff if she had not prevailed in the subject cases.  Defendants need not pay it either.

The Court allows a total of $420.71 for meal expenses excluding those incurred at the same time as the September 2011 stay at the Merced Doubletree.

### 12.        September 2011 Lodging and Meals

#### a.        Lodging Charges

Mr. Thimesch provided a hotel invoice totaling $676.30, for lodging only, for a five-night stay at the Modesto Doubletree Hilton from September 19 through 24, 2011.  Since only 534.62 remains of the hotel amount that Plaintiff requests, it is unclear what portion of these charges she seeks.  Since the Court determines these hotel expenses to be unnecessary, however, it need not resolve apparent shortfall of Plaintiff's request for hotel fees.

According to Mr. Thimesch's billing statement, he traveled to Modesto the evening of September 19, 2011 to meet Mr. Atwood before a "pre-settlement meeting" on September 20, and Defendants' depositions on September 21 and 22.  Although these meetings occurred in Merced, for undisclosed reasons, Mr. Thimesch and Mr. Atwater stayed in Modesto, approximately 40 miles away.  Mr. Thimesch did not bill any time for meeting with Mr. Atwater.

On September 20, 2011, Mr. Thimesch billed five hours, including travel time between Modesto and Merced (approximately 45 minutes each way) and a stop at the Merced Building Department to secure records, to the pre-settlement conference that was his ostensible reason for travelling to Merced.  Mr. Thimesch billed additional time totaling .9875 hours to write a meet-and-confer letter, conduct legal research, receive Mr. Danz's report, and perform various clerical duties.

Other than traveling 80 miles round-trip to pick up additional documents from the Merced Building Department, Mr. Thimesch billed nothing on September 21, 2011, that required his presence in Modesto or Merced with regard to the subject cases.  His total billing for the two subject cases was 2.1 hours (excluding .05 hours billed to clerical work) and consisted of various telephone conferences, e-mails, and correspondence with defense counsel, Plaintiff, and others associated with preparing the cases.

On September 22, 2011, Mr. Thimesch billed a total of 11.3 hours (excluding .1375 clerical hours), including 3.8 hours early morning preparation for depositions, 1.6 hours travel time between

Modesto and Merced, 5.8 hours conducting depositions and meeting with defense counsel, and .1 hour corresponding with defense counsel.

On September 23, 2011, Mr. Thimesch billed .4 hours (excluding .3125 clerical hours) for a telephone conference and correspondence with Plaintiff, and an e-mail to defense counsel .  On September 24, 2011, Mr. Thimesch billed .0375 clerical hours to the subject cases.

When the week's activities are viewed as a whole, the activities relating to the subject cases could easily have been accomplished in two days without a single night's hotel stay.  The Court will disallow all amounts attributable to hotel expenses for September 19-24, 2011.

**b.**    <u>**Meals**</u>

The Court will disallow, in full, Plaintiff's request for $267.00 attributable to Mr. Thimesch's and Mr. Atwood's evening meal at Galletto on September 19, 2011.  Their presence in Modesto was unnecessary, and the cost of the meal, which included a $140.00 bottle of wine and an $11.50 martini, was excessive.  Had Plaintiff not prevailed, Mr. Thimesch could not reasonably have billed this meal to her.  The Court will also disallow $35.46 in room service charges for breakfast on September 20, 2011.

Since Mr. Thimesch could easily have commuted to the pre-settlement conference on September 20, 2011, the Court will allow only lunch expenses of $36.00 at Fernando's Restaurant. The evening meal at Galletto's, totaling $88.00, is disallowed.

Appropriately, Mr. Thimesch did not request meal expenses for September 21, 2011.

For September 22, 2011, Plaintiff requests a room service breakfast ($27.48) and $8.39 for a soda and salad at an unidentifiable establishment.  Since an overnight stay was not required to attend the depositions, the Court will disallow the breakfast expense.  The $8.39 lunch is allowed.

Since Mr. Thimesch's services to Plaintiff did not require his presence in Modesto or Merced on September 23 and 24, 2011, the Court will disallow the meal charges attributable to those days, consisting of room service charges totaling $77.01.

In total, the Court allows $44.39 for meals the week of September 19-24, 2011.

///

///

**13.** **Summary**

The Court allows costs and expenses totaling $15,457.98.  Any other requested cost or expense, including but not limited to postage and mileage, is disallowed.

**VIII.** **Conclusion and Order**

In accordance with the foregoing, the Court ORDERS Defendants to pay Plaintiff attorney's fees of $155,545.83 and costs and expenses of $15,457.98, for a total of $171,003.81.

IT IS SO ORDERED.

Dated:   **April 16, 2014**                    **/s/ Sandra M. Snyder**
                                 UNITED STATES MAGISTRATE JUDGE